**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| SPD II MAKAIWA RESORT DEVELOPMENT, LLC, | ) ) | Chapter 11 |
| | ) | No. 23-7153 |
| Debtor(s). | ) | |
| | ) | Judge David D. Cleary |

**CORBAN KAUAI CHICAGO LENDER, LLC'S (I) RESPONSE TO WALSH
CONSTRUCTION COMPANY II, LLC'S MOTION TO MODIFY PRETRIAL ORDER,
AND (II) REQUEST TO EXCLUDE THE TESTIMONY OF MR. THOMAS COOPER
FROM THE FINAL EVIDENTIARY CONFIRMATION HEARING**

NOW COMES Corban Kauai Chicago Lender, LLC (the "**Plan Proponent**" or "**Secured
Lender**"), by and through its undersigned counsel, and hereby (i) responds (the "**Response**"), to
Walsh Construction Company II, LLC's ("**Walsh**") Motion to Modify Pretrial Order (the
"**Motion**"); and (ii) cross moves for an order to preclude any testimony or purported evidence from
being introduced at the confirmation hearing that Walsh, through its 30(b)(6) witness, Mr. Thomas
Cooper, did not testify to or provide during the discover period that *Walsh sought* in this matter.
In support hereof, the Plan Proponent respectfully states as follows.

**I.      PRELIMINARY STATEMENT**

1.      The Court should deny Walsh's Motion because it does not provide good cause for
relief from the Pretrial Order (as defined herein), and it is rendered moot by Walsh's own
compliance with the Pretrial Order. Walsh provides no good faith reason why the schedule—*that
it requested*—should now be modified. The Motion is yet another in a series of frivolous delay
tactics by Walsh[1] to further disrupt the Plan Proponent's good faith attempts to obtain confirmation

---

[1] Mr. Cooper, Walsh's 30(b)(6) designee testified over and over again that neither he nor anyone at Walsh had a
single fact to support Walsh's Objection. Instead, and in a transparent attempt to suggest that Walsh may have some

of its *Second Amended Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code* (the "**Amended Plan**") (ECF Nos. 160, 160-1), which provides a recovery to unsecured creditors—funded by the Plan Proponent—and received overwhelming support from creditors. Walsh, however, prefers to hold the entire plan process hostage in hopes of extracting a ransom from the Plan Proponent.  Walsh's tactics are harming creditors, causing unnecessary delay and are an abuse of process.

2.      Since the Plan Proponent filed its Amended Plan, Walsh has sought to impede the Plan Proponent's progress in proposing and confirming the Amended Plan.  Notwithstanding the Plan Proponent's multiple efforts to engage in constructive dialogue to address Walsh's alleged concerns with the Amended Plan, to the extent possible, Walsh has openly and unapologetically refused, hoping instead that being obstructionist and engaging in vexatious tactics will result in a payout from the Plan Proponent.

3.      Walsh has no legitimate objection to the Amended Plan, and its Bankruptcy Rule 7030(b)(6) witness, Mr. Thomas Cooper, admitted as much on multiple occasions during his deposition.  Mr. Cooper could not point to a single fact supporting Walsh's objection to the Amended Plan.  Instead, Mr. Cooper consistently—indeed, no less than 25 times during his deposition—suggests that <u>Walsh's counsel</u> has all of the facts supporting Walsh's Objection, but that he would not provide them (until the hearing).

4.      The purpose of the Amended Plan is to provide for an orderly wind-down of the Debtor's Estate and to distribute the remaining proceeds of a sale and any other cash, property, or interests that the Debtor retained following consummation of a sale to the holders of Allowed Claims in accordance with the terms of the Amended Plan and the claims priority provisions of

---

"evidence" to support its Objection, he claimed that Walsh's counsel "investigated" the "facts" but that those were all "privileged" or "work product" so the alleged "facts" would not be provided.

the Bankruptcy Code.  The Amended Plan has unanimous support among the Debtor's creditors.

The Amended Plan was accepted by the majority of the holders in the voting Classes that submitted

a ballot to accept or reject the Amended Plan.  The remarkable support of the Amended Plan is a

testament to its fairness, the good faith efforts that culminated in its filing, the benefit to creditors,

and its compliance with the Bankruptcy Code.

## II.    BACKGROUND

5.    On May 31, 2023, the Debtor filed a voluntary petition for relief under chapter 11

of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, in the United States Bankruptcy

Court for the Northern District of Illinois (the "**Court**").

### A.    The Amended Plan and Confirmation

#### (i)    The Amended Plan

6.    On March 6, 2024, the Secured Lender, as Plan Proponent, proposed a *Disclosure*

*Statement for the Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code*

(ECF No. 127, the "**Disclosure Statement**") and a *Plan of Liquidation Under Chapter 11 of the*

*United States Bankruptcy Code*, attached to the Disclosure Statement as Exhibit A (ECF No.

127-1, the "**Plan**") in the Chapter 11 Case.

7.    On April 29, 2024, the Plan Proponent filed the *Second Amended Disclosure*

*Statement to the Second Amended Plan of Liquidation Under Chapter 11 of the United States*

*Bankruptcy Code* (the "**Amended Disclosure Statement**") and *Second Amended Plan of*

*Liquidation Under Chapter 11 of the United States Bankruptcy Code* (the "**Amended Plan**")

(ECF Nos. 160, 160-1).

8.    On June 12, 2024, Walsh filed an objection to confirmation of the Amended Plan.

(ECF No. 199, the "**Walsh Objection**").

(ii)     The Confirmation Hearings and Timeline

9.      On June 26, 2024, the Court held the initial confirmation hearing on the Amended Plan.  The Court continued the confirmation hearing until July 17, 2024.  At the July 17, 2024 confirmation hearing, the Court continued the hearing to allow Walsh and the Plan Proponent to discuss, among other things, what Walsh believed was necessary in order to propose a discovery schedule, and continued the confirmation hearing to July 31, 2024.  Following the hearing on July 31, 2024, the Court entered a Pretrial Order (the "**Pretrial Order**") (ECF No. 225).

10.     Pursuant to the Pretrial Order, which adopted Walsh's proposed evidentiary confirmation hearing dates, the Court set a discovery deadline of August 26, 2024.  Exhibit and witness lists were due by August 29, 2024, and Walsh's pre-trial brief is due by September 5, 2024.  The Plan Proponent's pre-trial brief is due by September 12, 2024, and the evidentiary confirmation hearing is set for September 17, 2024 at 9:00 a.m. (prevailing Central time).  The Pretrial Order states "[t]he hearing date is firm.  No continuance of the date will be granted other than for good cause shown."  *See* Pretrial Order, ¶ 1.

**B.      The Amended Plan Confirmation Discovery Process**

11.     Following the Court's entry of the Pretrial Order, the Plan Proponent served a notice of deposition on Walsh pursuant to Fed. R. Bankr. P. 7030(b)(6).

12.     Walsh did <u>not</u> propose a deposition schedule for nearly two more weeks, on August 12, 2024 and, as has been par for the course, proposed a schedule that was incredibly broad and burdensome.  Notably, Walsh did not propose to take any depositions until the final full week of discovery under the Pretrial Order.  Stated another way, in the three (3) week discovery period, Walsh sought to backload <u>all</u> of its depositions without considering or discussing the schedules of proposed witnesses and their counsel and the impact of seeking to schedule three weeks of discovery into one (1) week.

- 4 -

13.     The Plan Proponent conducted the deposition of Walsh's Fed. R. Bankr. P. 7030(b)(6) witness, Mr. Thomas Cooper, on August 22, 2024.  Mr. Cooper could <u>not</u> identify a single fact to support Walsh's Objection and Walsh's counsel objected throughout the deposition that any facts supporting Walsh's objection were allegedly privileged or work-product (even though such an objection is entirely incorrect).  A true and correct copy of the Deposition Transcript of Mr. Thomas Cooper is attached hereto as **Exhibit A**.  Even though there are no facts in any event, because the Amended Plan has been presented by the Plan Proponent in good faith, it goes without saying if there were "facts" to support Walsh's position, Walsh may not cloak "facts" under the veil of privilege, refuse to provide them during its deposition, and then seek to present them at a later hearing in this matter.

14.     The Plan Proponent provided multiple dates and times on which its witness, Ms. Antoinette Walker, who submitted multiple declarations in support of confirmation of the Amended Plan, was available for deposition.  Ms. Walker and her counsel, who had to travel by plane to attend the deposition, were available on August 23 and August 26.  Walsh initially declined to take Ms. Walker's deposition on either date, and then agreed to August 26, which is when Ms. Walker's deposition occurred.  Notwithstanding Walsh's initial indication that it would take multiple depositions in support of its Objection, it took only one—the deposition of Ms. Walker.

15.     Walsh complains of the Plan Proponents filing of the Third Declaration of Antoinette Walker in support of Confirmation of the Amended Plan (the "**Third Declaration**") notwithstanding the fact that the Plan Proponent filed the Third Declaration to correct certain scrivener's errors from the Third Declaration of Antoinette Walker in support of Confirmation of the Amended Plan that did not substantively modify her prior declaration.  Walsh, as scheduled,

took Ms. Walker's deposition on August 26, 2024 for approximately five and one-half hours (5.5) and does not -- and could not -- require more time with her. *See generally*, Motion.

16.     Walsh now feigns a complaint that because it delayed providing a proposed deposition schedule and chose a video deposition, it cannot comply with the evidentiary timeline that it sought from this Court. Walsh asks the Court to modify the Pretrial Order and extend the confirmation schedule by at least two weeks (and potentially longer) to condone and accommodate Walsh's delay and its continued efforts to extract a payment to Walsh outside of the Amended Plan. Walsh's request is the latest attempt in a now long line of tactics to delay confirmation of the Amended Plan, which is widely supported by the Debtor's creditors.

### III.     ARGUMENT

17.     The Court should deny Walsh's Motion because it is does not demonstrate good cause to extend the deadlines in the Pretrial Order, causes unnecessary delay that further prejudices the Plan Proponent and creditors, and is mooted by Walsh's timely compliance with the Pretrial Order.

### A.     <u>**Walsh has not Demonstrated Good Cause to Amend the Pretrial Order.**</u>

18.     A finding of "good cause" depends on the diligence of the moving party. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *see also* FED. R. CIV. P. 16 advisory committee's note (1983) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). To satisfy the good cause standard 'the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met.'" *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) (quotation omitted). "Where a party seeks to modify the scheduling order, he must show that he had no reason to expect the information that forms the

basis of the motion." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 79-80 (S.D.N.Y. 2012).

19.     Here, Walsh cannot reasonably argue that it had no reason to expect that its own delay in scheduling depositions—including the one-week window in which it sought to conduct all depositions—would not potentially cause it delay.  Further, Walsh required the video deposition of Ms. Walker, which is now the alleged cause of the delay.  A short turnaround on a written transcript is neither uncommon nor unreasonable and, indeed, are routinely done by court reporters withing twenty-four hours.

20.     The Plan Proponent and other creditors continue to be harmed by Walsh's numerous delays and games.  First, it is the Plan Proponent that funds the maintenance and other costs associated with the property.  More time means the Plan Proponent funds more costs with the property.  Equally important is that Walsh's delay causes real harm to the creditors who overwhelmingly supported the Amended Plan and whose distribution is delayed further by Walsh's games.

21.     Finally, in a decision that is fatal to Walsh's Motion (and demonstrates how absurd the Motion is), Walsh *timely filed* its witness and exhibit lists on August 29.  *See* ECF Nos. 235 and 236.  Walsh cannot complain about needing more time to comply with the Pretrial Order when it did in fact comply with the Pretrial Order.  Walsh's compliance with the Pretrial Order further highlights Walsh's Motion for what it really is—a further attempt to delay confirmation while Walsh attempts to extract funds from the Plan Proponent to simplify confirmation.

## B.      The Court Should Exclude Testimony from Mr. Cooper.

22.      Akin to a *motion in limine*, the Court should exclude any testimony from Mr. Cooper beyond the limited scope of his testimony in his deposition on August 22, 2024.[2]  Mr. Cooper consistently testified that he did not have any facts supporting Walsh's Objection, and he could not cite any disputed facts regarding the Amended Plan.  Indeed, Mr. Cooper and Walsh are relying entirely on their counsel to prosecute the Objection.

23.      Mr. Cooper testified at least 25 times that Attorney Carter had all of the facts supporting Walsh's Objection in an effort to, at best, prevent the Plan Proponent from testing Walsh's support for its Objection and, at worst, to hide the fact that Walsh and Attorney Carter filed an Objection without any merit or good faith basis for doing so.[3]  As noted above, Attorney Carter argued (incorrectly) that the "facts" known by him (since Walsh claimed to have known none) are privileged—even though a fact cannot be privileged.  *See generally Basulto v. Netflix, Inc.* 2023 U.S. Dist. LEXIS 76537, Case No. 22-21796 (S.D. Fla. May 2, 2023) (finding that fact-oriented discovery of a 30(b)(6) witness is "permitted even if the witness learned about the facts from her attorneys.").  Walsh asserts the attorney-client privilege as a sword and a shield, which is improper and creates an implied waiver of the privilege.

24.      A party cannot assert reliance on advice of counsel, but then assert the attorney-client privilege to shield the disclosure of that advice.  *See Avery Dennison Corp. v. UCB Films PLC*, 1998 U.S. Dist. LEXIS 15727, at *13 (N.D. Ill. Sept. 30, 1998) ("Reliance upon counsel's opinions is a waiver of privilege because to hold otherwise would be inherently unfair; it would

---

[2] A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also American Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1463 (7th Cir. 1996) ("A motion in limine is a useful device for trying to exclude evidence before trial in order to prevent the trial from being interrupted by wrangles over admissibility or the jury from getting a whiff of prejudicial evidence that may in fact be inadmissible.").

[3] By way of example, see Cooper Depo. Tr. at 28:9-29:13; 43:15-45:20.

allow a party to use privileged material as a 'sword' to attack the opposing party's allegations of bad faith, while hiding the basis of its good faith belief behind the 'shield' of privilege."); *see also Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication.").

25.     Any change in testimony by Mr. Cooper and Walsh at the evidentiary hearing is prejudicial to the Plan Proponent because Mr. Cooper cannot, after his corporate designee deposition, educate himself on the facts—to the extent any exist—supporting Walsh's Objection and then modify his testimony at the confirmation hearing.

## IV.     CONCLUSION

26.     For the reasons set forth in this Response, the Plan Proponent respectfully requests that this Court enter an order (i) deny the Motion and maintain the current schedule in the Pretrial Order, (ii) excluding further testimony from Mr. Cooper at the evidentiary hearing, and (iii) granting such other and further relief as may be just and proper.

Dated:  September 4, 2024
Chicago, Illinois

Respectfully Submitted,

**REED SMITH LLP**

By:   */s/* Lawrence M. Benjamin
Lawrence M. Benjamin
Reed Smith LLP
10 S. Wacker Drive, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
E-mail: lbenjamin@reedsmith.com

*Counsel to Plan Proponent Corban Kauai Chicago Lender LLC*